Please call the first case. 211-596-IS-9 v. A.R.I. Brennan. May it please the Court, Counsel. My name is Farouk Nelson. I'm with the firm of Moss & Moss out of Clinton, Illinois. We represent the petitioner in this case, Ian Johnson. And this is an appeal from the Commission's denial of benefits on a Section 19B proceeding. There's only one issue here before the Court, and that issue is did the Commission err in finding that the petitioner failed to establish a causal relationship between a work accident that occurred on December 24, 2008 and the petitioner's subsequent condition of ill-being. The facts that bear upon this issue are not really in dispute. The dispute is what inference should a rational trier of fact have drawn from those facts. And our position is that the Commission drew the wrong inference because the Commission applied the wrong legal standard to the unrebutted causation opinion of the treating physician, Dr. Felipe. And what would be that standard? The standard would be that the petitioner must show that by a preponderance of evidence that the work accident was a causative factor in his subsequent condition of ill-being, and he can make that showing by testimony to a reasonable degree of medical certainty that the work accident could have or might have caused or aggravated the condition. And that's exactly what the statute says. Who in this case provided that opinion? Dr. Felipe. Are you sure about that? Yes. Didn't the record clearly indicate that he was, after he considered the treatment records, he changed his opinion regarding causation and stated he did not know whether there was a cause and effect relationship between the claimant's employment, injury, and his current condition of ill-being. He said, actually, that he was not as sure as he was before. He could no longer say absolutely that it was cause and effect, but that he could still say to a reasonable degree of medical certainty, even assuming all of the doubts that had been raised by Dr. Vlachos that maybe this guy was exaggerating somehow, maybe he wasn't quite as bad off as he presented to be, even assuming all of that, that it was still the case, to a reasonable degree of medical certainty, that the accident could have or might have either caused the condition or if it was a preexisting condition, aggravated that condition. Now, this could have or might have, does the could have or might have supply evidence of a mechanism of injury or does it actually supply evidence of a proximate causal relationship? I'm not sure I understand the question. Well, the doctor can say if you trip on a curb, it could or might cause a broken leg. But the question is, did you trip on a curb? And is that what actually caused you to break your leg? The question is asked of the physician in terms of a hypothetical. Assuming that there was a fall, could that fall? Assuming that there was a fall, as reported in the consistent history given throughout the medical records, could that fall or might that fall have caused the condition that the petitioner was complaining of? That's evidence of mechanism. That's not evidence of proximate cause. He's assuming that the facts as reported by the claimant took place. Now, he doesn't know whether they took place. To say that it could or might have is not evidence that it did take place. It's merely evidence that the mechanism of injury as described by the claimant could produce this injury or might have. Because we get cases here where the doctor says, wait a minute, hold on. What he described couldn't possibly have caused the injury he complains of. We get that all the time here. Correct. So the could or might have is only evidence of mechanism. It is not evidence of proximate cause. Now, who says that it actually happened the way he said it happened? That the fall actually occurred? Yeah. The arbitrator says that and the commission presumes that when it goes on then to rule upon the issue of causation. Without establishing that there was an injury arising in the course of And there's no reason for them to reach that issue of causation. Counsel, Dr. Fulop also testified that he was no longer sure that the claimant's condition was causally connected to the December 2008 accident. And he could not say that his previously expressed causation opinion was within a reasonable degree of medical certainty. So what supports the causal connection? Is the doctor himself saying he's not sure about it anymore? I believe the record indicates that he says he's not as sure as he was before, but he's still able to say, and he says this several times, he's still able to say to a reasonable degree of medical certainty that it could have or it might have either caused the condition or if the condition already existed, if the herniation was already there, it aggravated it and made it become symptomatic where it was not previously. Well, obviously the commission didn't read it that way. How do you respond to the argument you're simply asking us to reweigh the evidence here? We're not asking you to reweigh the evidence at all. We're asking you to restate the arbitrator's decision because the arbitrator used the proper standard and came to the proper conclusion. We don't want you to reweigh the evidence. What do you say? Didn't he testify? Which he? We're talking about Dr. Fulop, who we're talking about? Yes. Didn't he state that he didn't know whether there was a cause and effect relationship between the employment injury and the current condition of ill and that his treatment notes caused him to suspect that the claimant had not suffered a serious neck injury and that his symptoms may not have been real? Didn't he testify to that? Dr. Fulop said that if he had seen what Dr. Vlachos noted in his notes, he would be suspicious. But he never saw anything like that in his own examination. He said, but given that Dr. Vlachos raised all of these suspicions, he was now no longer able to say with absolute certainty, as he was prepared to say before, that it was caused. Did Dr. Fulop also testify that the claimant's symptoms were not consistent with the results of certain diagnostic tests? He said that some of the symptoms did not seem to fit as well as he thought they had previously, but they still could have or might have been caused. That's not to say that on further investigation, which is what he wanted, he wanted a neurosurgical consult, it's not to say that it would have turned out at the end of the day that they were in fact caused, but there was a reasonable belief that they could have or might have, and on that basis, the petitioner should have been awarded the treatment to which he was entitled. So as I say, our position is that the Commission has applied the wrong standard. They held Dr. Fulop's opinion to a much higher standard than the precedent allows for, and if they had applied the proper standard, there's no way that a rational trier of fact could have drawn any other conclusion but that the petitioner met his burden. And because the petitioner met his burden, the arbitrator's decision should be reinstated, and we should go back to the beginning, I guess. This was only a 19B. There's only interim benefits, after all, and we have no idea what this guy's permanent condition will be. Thank you, Counsel. Thank you. We'll have time on rebuttal. Counsel, please. Good morning. May it please the Court? My name is Lisa Henderson. I am the attorney for the respondent in this case. Just to follow up briefly on what Your Honors were questioning, you're absolutely right. The first issue to be determined is if that fall actually occurred, and there is a substantial amount of evidence to suggest that it did not. So also along those same lines, I know that there was some questioning about the causation standard. That's a side issue. The primary issue to look at is did the fall occur? The Commission found the arbitrator, found that it did. And what did the Commission do with the arbitrator's decision? They reversed it and denied the claim in its entirety. So under my reading, that would be? So you're assuming that they reversed the arbitrator's finding that there was indeed a fall? Correct. Correct, because they, in the decision, it stated the arbitrator's decision, the Commissioner, excuse me, the Commission's claim is denied. The Commission's claim? The claimant's claim is denied. Excuse me. With any further elaboration? I mean, it goes on to explain, as Your Honors have discussed, the issues with the credibility of the petitioner, the issues with the medical evidence, as was described, which is that Dr. Felipe, petitioner's own chosen doctor, had some concerns about petitioner's credibility. And after looking at the medical records from the date of the injury and the dates subsequent to the injury, he testified that in looking at Well, their concern about the claimant's credibility, to what issue does that go to? I think it goes to the issue of if the incident occurred. But I think it also goes to the issue of if he has ongoing complaints. You know, the complaints that he's having, as it was touched upon, don't even make logical sense with what's going on with the pathology that was suggested. He was complaining of right-sided complaints. The pathology on the MRI suggested a left-sided problem. Also, the EMG was negative as well, which would suggest no nerve root pathology. Dr. Felipe noted that. Also, the complaints that he had were in fingers that did not match the dermatome for what would be found on the MRI, which is to say that if the finding on the MRI is causing the petitioner complaints of pain, the complaints of pain that he's complaining of aren't logical as to that pain generator. Let's go back to that incident. You're saying the commission didn't find an accident? I believe that the petitioner, that the commission in stating the petitioner's claim is denied. Reynolds says it's ordered by the commission that since the petitioner failed to prove a causal relationship exists between the accident of December 24, 2008 and the condition of ill-being, I mean, that seems to state something about an accident, doesn't it? Yes, but I believe in reading that in its entirety, especially with the claim being denied. It's my reading that- Well, normally you'd go with the language, okay? They did refer to an accident. He's correct about that. But what do you make of your opposing counsel's argument that Dr. Felipe's testimony and opinion is unrebutted? I don't believe that at all because I don't believe that his opinion is what my opponent purports it to be. I believe that his opinion is, after viewing the additional evidence as I presented to him in his deposition, he changed his mind and he testified that it wasn't the cause of the injury. And if you recall, he actually testified, you know, in looking at the entire, the totality of the evidence, it appears as if he did have an injury from that work incident. It resolved. And that what he is complaining of by the time Dr. Felipe saw him was something new. So I don't believe that there's- I guess technically it's unrebutted in that there's not another doctor saying one thing or the other, but I don't believe that Dr. Felipe is making that connection. Because it was so equivocal in the way he modified it, he retreated from the cause of connection opinion. Correct. And if you note, he, at the end of his deposition, he testified, if it happened, then, you know, maybe. I don't know. Which certainly is not the reasonable degree of medical certainty that is required by the court. I would just urge the court to look at all of the issues. You're no stranger to the issues of the standard against the manifest weight of the evidence. On the one hand, there is, of course, the petitioner stating that he fell and that he fell on wet steps and sustained an injury. However, in looking at the totality of the evidence, all the other evidence suggests that that was not the case. First of all, petitioner- Well, we've got to go with the commission's finding. They found an accident. That's plain language. Even assuming that they did find an accident, I think from there you also have to go with the commission's finding that Dr. Felipe's opinion was not enough to meet that standard of causation. So even assuming that, I still don't think it gets petitioner to benefits. The commission found that Dr. Felipe testified that he would agree, this is after he reviewed Leo's records, that his causation opinion has changed from that of a reasonable degree of medical certainty to mere possibility. Is that true? Did he testify to that? I think that that's a fair assessment of his testimony. It's reasonable to say that something occurred on December 24th and that it got better by December the 29th? Correct. So that even after December 29th, any complaints that he was having or any ongoing symptoms would be- He says that he's not sure that the herniated disc happened at the fall? Correct. And he also, I pointed out an instance where a petitioner complained of picking up his child and feeling a complaint of pain in his neck. And that was something that Dr. Felipe testified could have been the new intervening event that caused petitioner's alleged complaints of pain. He also found that he testified that he cannot say that his opinion that the December 24, 2008 incident caused plaintiff's complaint is within a reasonable degree of medical certainty. Did he testify to that? Yes, he did. Okay. Anything further? Thank you, counsel. Thank you. Rivello? May I please, court? With regard to whether or not Dr. Felipe testified to the required degree of certitude, we admit that Dr. Felipe was a lot more certain at the beginning of the deposition than he was by the end of the deposition. And that because he couldn't remember whether he had looked at all these records that had been sent to him, he was kind of quite flat-footed. He tried to look at them on the fly. He made some remarks that could be taken as not really knowing what he was doing. We admit all of that. But at the end of the day, you look at the transcript on redirect. Mr. Moss asks him, this is at A133, which is C387 in Dr. Felipe's deposition transcript. Okay, this is at line 17. Question, okay, knowing everything you know now, having read everything you've read, having been at this now for a couple hours or three, answer, I think it could have. I don't have an MRI of the day before. Question, within a reasonable degree of medical certainty? Yes. Based on, especially on the ER report on the 25th. Okay, now let's assume that perhaps this herniated disc preexisted this fall. Because as you say, we don't have an MRI from the day before. We don't know. But let's assume there's a herniated disc before. Might this fall, assuming the fall happened, have aggravated? Answer, it's possible. Possible. Okay, that's within a reasonable degree of medical certainty? Yes. Our contention is that Dr. Felipe testified to the degree that he was required to testify. The commission applied the wrong standard, held him to a much higher standard than the case law will support. And that on that basis, the commission should be reversed. The decision of the arbitrator should be reinstated because the arbitrator applied the proper standard. You couldn't even convince one of the commissioners. Pardon me? You couldn't convince one of the commissioners who are somewhat employee-related. I believe that the commissioners fell for this idea that, well, he must have done something sneaky because look at all these facts. Look at all these facts. He didn't even fall down. He didn't even fall down. That was no accident. They decided that, you know what? That's not what they decided. No, they didn't decide that he didn't fall down. Justice Roberts was entirely correct. They didn't decide that he didn't fall down. But that's what they were told at the commission. I don't care what they were told. That's what they argued to them. That's not what they decided. Correct. They decided that there was an accident. Yes. But he had failed to prove a causal connection between that accident and his claimed condition of ill-being. That's what they found. Correct. They found there was an accident. That should not be disturbed by this court. But they applied the wrong standard to the causation opinion. And that's a question of law. And the court owes no deference to the commission on that. And if there are no further questions, then I have nothing further. Thank you, counsel. The court will take the matter under advisement for disposition.